Filed 9/30/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN McDONIEL, | D084660 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1926005) |
| KAVRY MANAGEMENT, LLC, | |
| Defendant and Appellant. | |

APPEAL and cross-appeal from a judgment of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge.  Affirmed in part; reversed in part.

The Myers Law Group, David P. Myers and Douglas Smith for Plaintiff and Appellant.

Arias & Lockwood and Christopher D. Lockwood for Defendant and Appellant.

This case involves an issue of first impression:  Whether an employer's violation of Labor Code section 432.2[1]—governing in part the right of a private employee to refuse to submit to a polygraph, lie detector or similar

_____

[1]    All further undesignated statutory references are to the Labor Code.

test as a condition of continued employment—supports a claim for wrongful discharge in violation of public policy. In this case, the jury found defendant Kavry Management, LLC (Kavry) required plaintiff Steven McDoniel to take a polygraph examination, after Kavry experienced a theft of cash and marijuana from its licensed marijuana-growing facility where McDoniel worked, then fired him after the polygrapher determined he had "failed" the test. The jury awarded McDoniel $100,000 in noneconomic damages.

On appeal, Kavry maintains section 432.2 cannot support a claim for the tort of wrongful discharge because its violation does not implicate a fundamental policy that affects the public or a large class of persons. It instead claims McDoniel's damages, if any, should be limited to his taking of the polygraph examination itself, without regard to any effect the results of that examination had on his employment status. Kavry also maintains the court erred in awarding McDoniel attorney fees of about $212,000 under section 432.6, claiming this statute applies to employment contracts entered into on or after January 1, 2020, which would exclude McDoniel because his employment at Kavry ended in September 2018.

In his cross-appeal, McDoniel contends that, to the extent the trial court improperly based the attorney fees award on section 432.6, it erred by not separately awarding him fees under the private attorney general fee statute (Code Civ. Proc., § 1021.5) or the Private Attorneys General Act of 2004 (Lab. Code, §§ 2698, 2699, subd. (k)(1); PAGA). He also contends the court erred when it initially added Kavry's then owner and manager, Chris Shepard, to the judgment, then vacated that judgment on its own motion and entered a new judgment against only Kavry.

As we explain, we conclude that McDoniel stated a valid cause of action for wrongful discharge based on Kavry's violation of section 432.2; and that as a result, the jury properly awarded him noneconomic damages of $100,000.

We further conclude (1) the trial court erred when it based its attorney fees award on section 432.6; (2) the court properly exercised its discretion when it denied McDoniel fees under the private attorney general fee statute; and (3) McDoniel forfeited on appeal his claim for an award of fees under PAGA.

Finally, on this record we decline to decide whether Shepard should be added to the judgment against Kavry, as McDoniel contends in his cross-appeal. McDoniel filed a motion to amend the judgment to include Shepard as the alter ego of Kavry about six months *after* entry of the judgment, and about a year *after* McDoniel filed his first cross-appeal in this case. (See footnote 3, item 3 *post*.) In addition, McDoniel further claims in his request for judicial notice (*ibid*.) that "judicial estoppel" precludes Shepard and Kavry from arguing that Shepard is not liable for the judgment, after McDoniel—postjudgment—unsuccessfully sought to intervene in an unrelated, third-party action brought by Shepard. Because this issue primarily involves events and contested factual matters arising postjudgment that have yet to be resolved by the trial court, we are unable to decide it in this proceeding.[2]

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Hiring Of McDoniel*

Kavry hired McDoniel in June 2018 to work as an "assistant grower" at its licensed marijuana-growing facility in Adelanto, California (the high-

---

[2] We express no view on whether Shepard should be added to the judgment following this appeal. That is a question for the trial court to answer in the first instance.

desert region in San Bernardino County). Shepard at the time was the sole owner and manager of Kavry. Joseph Kennedy was one of McDoniel's supervisors.

**B.**   *Shepard Hires a Polygrapher After the Theft of Cash and Marijuana*

In mid-August 2018, cash and marijuana were stolen from the storage room at Kavry's growing facility. Shepard estimated Kavry's losses totaled about $70,000. Although surveillance video captured the incident, Shepard could not identify the perpetrators because they wore "hoodies" and "face

---

3     We summarize the facts in the light most favorable to McDoniel, drawing all reasonable inferences and resolving all conflicts in favor of upholding the judgment. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 522, fn. 1 (*Behr*).) The parties submitted motions to augment the record and requests for judicial notice that we deferred to the merits panel. We now rule as follows on the deferred items, refusing to consider those that are not a part of the record on appeal: (1) Kavry's September 19, 2024 request to augment the record with the deposition transcript of witness Josh Chandler, and McDoniel's joinder in that request: granted (Cal. Rules of Court, rule 8.155(a)(1)(A)); (2) Kavry's September 19, 2024 opposed request for judicial notice of the legislative history of section 432.6: granted (Evid. Code, §§ 451, subd. (a), 452, subd. (c)); (3) McDoniel's respective November 27, 2024 and December 3, 2024 opposed requests to further augment the record and for judicial notice of matters occurring after the judgment and his cross-appeals: granted, but only for the limited purpose of observing these postjudgment matters (see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons*) [absent extraordinary circumstances, " 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered' "]); and (4) McDoniel's January 13, 2025 opposed request for judicial notice of the legislative history of PAGA to support his claim of entitlement to attorney fees: denied (see *People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 471, fn. 8 [denying request for judicial notice of various materials pertaining to the legislative history of a section of the Corporations Code "as not relevant to a material issue" in the case]).

4

mask[s]" and covered their car's license plate. McDoniel was never interviewed about the theft and only learned about it from Kennedy.

In early September 2018, Shepard called master grower Josh Chandler and said, " 'Hey, somebody is coming to do lie detector tests.' " Shepard found the polygrapher, Rachel Levy, on the Internet. Shortly after Shepard's phone call, Levy arrived at Kavry's Adelanto facility. Chandler told Kavry employees, including McDoniel, that Shepard had called a polygrapher and " 'Y'all need to go take a polygraph test.' " According to Chandler, several employees—including McDoniel—took the test "because they thought they had to for their job." McDoniel was "surprise[d]" about the polygraph examination, as he had never taken one before.

As McDoniel entered Shepard's office for the examination, Levy said, " 'You know why you're here' " and instructed him to sit in a chair near the polygraph machine. She then "hooked" McDoniel up to the polygraph and asked him some questions to establish a "baseline." During this initial questioning, McDoniel had second thoughts about taking the examination, as he had not received any "paperwork" or advisement regarding his employee rights, or how a polygraph even worked.[4] He felt uneasy and believed Levy's questions were "odd."

Levy next questioned McDoniel about the theft of cash and marijuana. McDoniel felt he was being "interrogat[ed]" by her. After about 20 minutes of questioning, she said, " 'Well, you failed' " and " 'Do you want to tell me anything?' " McDoniel responded he answered all of her questions

---

4    Levy claimed she would not have conducted the polygraph examination on McDoniel or any other Kavry employee unless each had signed a preprinted consent form she previously had provided Shepard. At trial, however, Kavry was unable to produce any of the consent forms purportedly signed by its employees, including McDoniel.

"truthfully," and reiterated he had nothing to do with the theft and did not know who had carried it out. At Levy's suggestion, he agreed to retake the examination, which he also "failed."

Kennedy also took the polygraph examination because he believed "[i]t was required of [him]." He testified that Levy did not provide him with any advisement, written or otherwise, regarding polygraph testing and his employee rights, including the right not to take the test. According to Kennedy, "it was take the test or basically get fired."

## C. *Kavry Terminates McDoniel's Employment After He "Failed" the Examination*

McDoniel was "shocked beyond belief" and "scared" after Levy told him he had "failed" the polygraph examinations. He worried the career he had planned in the marijuana-cultivation industry would be over, as Adelanto was a small community and his reputation was "everything." After the examination, Chandler approached him and said, "Chris Shepard does not want you working here anymore. You're being terminated," or words to that effect. McDoniel inquired whether his termination was due to the polygraph test. Chandler replied, " 'Yes.' "

Later that day at home, McDoniel researched polygraphs and employee rights regarding testing. He concluded Kavry should have advised him of his right to refuse to take the polygraph examination at the time of testing. Had Kavry done so, McDoniel would not have taken the examination because he believed polygraphs are inaccurate.

Over the next few days, McDoniel asked Chandler to talk to Shepard about getting his job back. Chandler repeated that Shepard no longer wanted McDoniel working for Kavry because of the polygraph test. In an e-mail to McDoniel, Chandler wrote he tried to talk to Shepard about McDoniel returning to work but had "no chance of getting through to

6

[Shepard]," and that what Shepard had done to McDoniel was "f***ing bull****."

McDoniel also spoke to Shepard about getting his job back. During each of their conversations, Shepard wanted to know why McDoniel had failed the polygraph examination and who had stolen the cash and marijuana from the storage unit. McDoniel continued to deny any knowledge of the theft and could not explain the polygraph results. Although Chandler told McDoniel his employment was terminated due to the test, when McDoniel posed this question directly to Shepard, he responded, " 'It [i.e., business] is slow.' " McDoniel, however, was never put back on the work schedule, effectively ending his employment with Kavry.

McDoniel had trouble sleeping for weeks after his termination. He worried about finding a new job, paying his bills, staying in his home, and at one point felt he was having a "nervous breakdown." He also worried about being "blackballed" in the marijuana-growing business if word got out in Adelanto that he had failed a polygraph examination while employed by Kavry.

In fall 2018, McDoniel began working at a marijuana dispensary in Adelanto. In November 2018, Shepard e-mailed McDoniel asking about his "availability." McDoniel did not respond. At the time of trial, McDoniel was working for another marijuana grower in Adelanto.

D.  ***McDoniel's Complaint, Pretrial Proceedings, and Trial***

In September 2019, McDoniel filed a complaint against Kavry and Shepard, alleging causes of action for wrongful termination in violation of public policy; defamation; and violations of sections 432.2, 1198.5 (requiring an employer to provide a copy of an employee's personnel records, upon request), and PAGA (seeking penalties for violation of various Labor Codes).

7

McDoniel sought general and punitive damages and an award of costs and attorney fees, including under Code of Civil Procedure section 1021.5 and Labor Code sections 432.2 and 1198.5.

Kavry and Shepard subsequently moved for summary judgment or summary adjudication in the alternative. The trial court denied summary judgment but granted summary adjudication on McDoniel's defamation and PAGA causes of action, and on his punitive damages claim.[5]

On the eve of trial, McDoniel, on the one hand, and Kavry and Shepard on the other, through their respective counsel, entered into a stipulation that led to Shepard's dismissal from the case without prejudice (Stipulation), as discussed in detail *post*.

In December 2022, the jury found Kavry liable for wrongful termination in violation of public policy and for violations of sections 432.2 and 1198.5. The jury awarded McDoniel noneconomic damages of $100,000.[6] In mid-February 2023, Kavry filed motions for a new trial and judgment notwithstanding the verdict (JNOV). In early March, Kavry objected to McDoniel's proposed judgment that named Shepard jointly and severally liable with Kavry for the damage award.

In early April 2023, the trial court refused McDoniel's request to informally reconsider its ruling granting summary adjudication on his PAGA

---

[5] On appeal, McDoniel has not challenged the trial court's grant of summary adjudication as to his defamation cause of action or his punitive damages claim. Regarding PAGA, as we discuss *post*, he challenges the court's ruling only to the extent it refused to penalize Kavry $100 and more importantly, award him attorney fees under this statutory scheme, as an alternative ground to the fees it did award under section 432.6.

[6] The trial court, under subdivision (k) of section 1198.5, subsequently imposed a $750 penalty against Kavry for its violation of this statute. Kavry has not challenged this penalty on appeal.

claim and, over Kavry's objection, entered judgment for McDoniel against Kavry and Shepard. The court, however, vacated that judgment on its own motion a few days later and entered a new judgment against only Kavry. In late April, the court denied Kavry's new trial and JNOV motions. On November 27, 2023, the court entered an amended judgment against Kavry for $100,000, also awarding McDoniel $212,011 and $16,186.23 in attorney fees and costs, respectively.[7]

## DISCUSSION

## I.

## Wrongful Termination in Violation of Public Policy

Kavry contends the trial court erred in instructing the jury it could award McDoniel tort damages for wrongful discharge based on a violation of section 432.2. In support, Kavry makes a series of arguments including that section 432.2 is limited in scope and its policy is therefore neither sufficiently "public" nor "fundamental"; and that the jury never found it demanded or required McDoniel to submit to the polygraph examination as a condition of employment. We disagree with Kavry.

### A.    *At-will Employment and Wrongful Discharge*

"[S]ection 2922 provides in relevant part, 'An employment, having no specified term, may be terminated at the will of either party on notice to the other. . . .' This presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. [Citations.] Absent any contract, however, the employment is 'at will,' and the employee can be fired with or without good cause. But the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy, since otherwise the threat of discharge could be used to coerce

---

[7]    Kavry did not file a motion to tax costs in the trial court.

employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal." (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665 (*Foley*).) "Accordingly, while an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1094.)

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170, 177; accord, *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 702 ["The central assertion of a claim of wrongful termination in violation of public policy is that the employer's motives for terminating the employee are so contrary to fundamental norms that the termination inflicted an injury sounding in tort."].)

**B.**     ***Elements of a Wrongful Discharge Claim and the Policy Supporting that Claim***

The elements of a cause of action for wrongful discharge in violation of public policy are "(1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154.)  Kavry primarily focuses on element (3) and what it claims is the lack of a public policy concern due to the "limited scope" of section 432.2.

Our Supreme Court has "established a set of requirements that a policy must satisfy to support a tortious discharge claim.  First, the policy must be supported by either constitutional or statutory provisions [or regulations

enacted under statutory authority]. Second, the policy must be 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be 'fundamental' and 'substantial.' " (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890 (*Stevenson*); accord, *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 75 (*Green*) ["the term 'public' in *Tameny*'s public policy exception . . . must further a policy affecting the public interest, which must be fundamental or substantial when the company discharges the employee"].)

## C.   *Analysis*

### 1.   *Violation of Section 432.2 and the "Policy" Requirement*

We conclude a violation of section 432.2 meets the policy requirements for a tortious discharge claim.

First, McDoniel's wrongful discharge claim is based on statute. Section 432.2 provides: "(a) No employer shall demand or require any applicant for employment or prospective employment or any employee to submit to or take a polygraph, lie detector or similar test or examination as a condition of employment or continued employment. . . . [¶] (b) No employer shall request any person to take such a test, or administer such a test, without first advising the person in writing at the time the test is to be administered of the rights guaranteed by this section."

Second, the policy behind section 432.2 inures to the benefit of the public and not merely to McDoniel or any other individual, as it protects all private-sector employees or applicants for employment from being forced to take a polygraph test as a condition of employment or continued

11

employment[8]; and requires employers to advise all such employees and applicants at the time of testing of their rights under the statute.

Third, section 432.2 became effective in 1963[9]; the Legislature amended the statute in 1981 to designate the former section as subdivision (a) and to add subdivision (b).[10]  Thus, section 432.2 was in effect decades before Kavry hired polygrapher Levy in September 2018.  (See *Stevenson, supra*, 16 Cal.4th at p. 889 [policy must be " 'well established' at the time of the discharge"]; accord, *Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 926 ["The public policy violated by an alleged wrongful discharge must be 'one about which reasonable persons can have little disagreement, and which was "firmly established" at the time of discharge.' "], quoting *Foley, supra*, 47 Cal.3d at p. 668.)

Fourth, the policy in section 432.2 of prohibiting involuntary polygraph examinations is "substantial" and "fundamental."  The Legislature in 1981 amended section 432.2 to add the notice requirement in subdivision (b) "to curb some of the abuses suffered by [California] workers concerning the administration of and the submission to polygraph tests" (Sen. Com. on Industrial Relations, Background Information on Assem. Bill No. 2126 (1981–1982 Reg. Sess.) as amended May 14, 1981, p. 1); and because "many employees or applicants [did] not know their rights regarding lie detector examinations in employment" (Assem. Com. on Labor and Employment, Bill

---

8    By its express terms, section 432.2 does not apply to the federal or state governments, or any respective agency thereof, or to counties and cities. (§ 432.2, subd. (a).)

9    (Lab. Code, § 432.2 added by Stats. 1963, ch. 1881, § 1.)

10    (*Id.*, amended by Stats. 1981, ch. 316, § 1.)

12

Analysis on Assem Bill No. 2126 (1981–1982 Reg. Sess.) as amended May 14, 1981, p. 1).

In addition, our Supreme Court has found that polygraph examinations "inherently intrude upon the constitutionally protected zone of individual privacy"[11] (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 948 (*City of Long Beach*)); that in enacting section 432.2, "the Legislature evinced a belief in the unreliability of polygraph testing and the undesirability of its use as a condition of employment" (*id.* at p. 949); and that it adopted section 432.2 because "polygraph testing (1) creates suspense and distrust between employers and employees; and (2) is not entirely accurate and may result in false findings when used by inexperienced persons. (Stats. 1963, ch. 1881, Assem. Bill No. 927, p. 3866.)" (*City of Long Beach*, at p. 949.)

From the foregoing authorities, we conclude that a violation of section 432.2—which, as the present case shows, can result in an adverse employment action—contravenes a "fundamental" and "substantial" policy that will support a tort cause of action for wrongful discharge. (See *Stevenson, supra*, 16 Cal.4th at p. 889; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 947 [plaintiff's discharge for complaining about

---

[11] Courts have relied on an individual's right to privacy in the workplace to support an action for wrongful discharge in violation of public policy. (See e.g., *Semore v. Pool* (1990) 217 Cal.App.3d 1087, 1097 [error in sustaining a demurrer to the plaintiff's wrongful termination action based on allegations the plaintiff was fired for refusing to submit to a noninvasive drug test, noting that, "[w]hile rights are won and lost by the individual actions of people, the assertion of the right [of privacy] establishes it and benefits all Californians in the same way that an assertion of a free speech right benefits all of us"]; but see *Luck v. Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1, 27–28 (*Luck*) [terminating an employee for refusing to submit to urinalysis testing was a private matter because the "right to privacy is, by its very name, a private right, not a public one"].)

unsafe work environment supported claim for wrongful termination in violation of public policy].)

Kavry contends that the policy of section 432.2 has a "limited scope." Kavry, however, cites no legal authority to support this contention. (See *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 ["We repeatedly have held that the failure to provide legal authorities to support arguments forfeits contentions of error."].) In any event, section 432.2 is very much public. As we have noted, it applies to *all* private employers in this state and protects employees or applicants for employment from being compelled to take a polygraph or similar examination as a condition of employment or continued employment. Section 432.2 thereby minimizes adverse employment actions that result from tests that our Legislature has deemed unreliable and undesirable. (See *City of Long Beach*, *supra*, 41 Cal.3d at p. 949.)

2. *McDoniel Submitted to the Polygraph Examination as a Condition of Continued Employment and Was Fired After "Failing" the Test*

Kavry contends there is no evidence that it required McDoniel to take a polygraph "as a condition of employment." But, when McDoniel took the polygraph examination, he was already employed by Kavry; he therefore took the examination believing it was a condition of "*continued* employment." (§ 432.2, subd. (a), italics added.) In any event, substantial evidence support the findings he (1) submitted to the examination only because he believed Kavry required it; and (2) did not receive the mandatory written notice when the test was administered.

"When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188 (*Wilson*).) "We must 'view the

14

evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor.' " (*Ibid.*) " '[N]either conflicts in the evidence nor " 'testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 (*Lenk*).)

As summarized, Chandler told McDoniel and the other Kavry employees onsite that Shepard said they "need[ed] to go take a polygraph test." Chandler testified McDoniel and others presumably took the test "because they thought they had to for their job." Kennedy, McDoniel's supervisor, took the polygraph examination because it "was take the test or basically get fired."

In addition, the polygraph examination took place on Kavry's premises during the workday, after the theft of cash and marijuana from the same premises the previous month. This evidence supports the inference that McDoniel's polygraph examination was compulsory, as does the comment by Levy when he first entered Shepard's office, " 'You know why you're here.' " McDoniel also never received written notice or "paperwork" regarding his "guaranteed" right under section 432.2, nor did Levy tell him the examination was optional, as also confirmed by Kennedy.

Moreover, substantial evidence supports the finding Kavry discharged McDoniel for "failing" the polygraph examination. While still on Kavry's premises after the test, Chandler told McDoniel that Shepard did not want him working for Kavry anymore, that he was being "terminated." A few days later, Chandler e-mailed McDoniel that he couldn't get "through" to Shepard

15

about bringing McDoniel back to work, and shared his frustration over Shepard's treatment of McDoniel. This evidence further supports the finding that Kavry discharged McDoniel due to the "failed" polygraph examination. (See *Wilson, supra*, 169 Cal.App.4th at p. 1188; *Lenk, supra*, 89 Cal.App.4th at p. 968.)

Kavry also contends the form of CACI No. 2430[12] and special verdict Nos. 1 and 2[13] prevented the jury from making a finding that Kavry violated subdivision (a) of section 432.2 because each "lumped both

---

[12] The trial court instructed the jury with CACI No. 2430, which in part provided: "Steven McDoniel claims he was discharged from employment and/or was not scheduled to work for Kavry . . . for reasons that violate a public policy. It is a violation of public policy for an employer to 1) demand or require any employee to submit to or take a polygraph, lie detector or similar test or examination as a condition of employment or continued employment, *and/or* 2) request any person to take such a test, or administer such a test, without first advising the person in writing at the time the test is to be administered of his rights." (Italics added.)

[13] On the cause of action for wrongful termination in violation of public policy, the jury answered "Yes" to question No. 3 in special verdict No. 1, which asked: "Were the results of Kavry['s] . . . A) demand or requirement that Steven McDoniel submit to or take a polygraph, lie detector or similar test or examination as a condition of employment or continued employment, *and/or* B) Kavry['s] . . . request for Steven McDoniel to take a polygraph, lie detector, or administration of such a test, without first advising Mr. McDoniel in writing at the time the test was administered of his right not to submit to or take a polygraph, lie detector or similar test a substantial motivating reason for Steven McDoniel's discharge and/or other adverse employment action?" (Italics added.) The jury also responded "Yes" on special verdict No. 2, asking whether Kavry violated section 432.2 either by demanding or requiring McDoniel to take a polygraph examination or similar test as a condition of his continued employment with Kavry, "and/or" by requesting he take such a test, or administering such a test, "without first advising [him] in writing at the time the test was administered of [his] right not to submit to or take a polygraph . . . or similar test?"

16

subdivision[s] (a) and (b) together" and used the words "and/or." We are not persuaded.

3. *Kavry Forfeited Any Objection to CACI No. 2430 and/or Special Verdict No. 1*

Kavry filed objections to the jury instructions and special verdicts. It, however, did not specifically object to the "and/or" language in CACI No. 2430 or special verdict Nos. 1 and 2. Regarding CACI No. 2430, Kavry's objection provided: "The reasons there is [*sic*] no legal basis for a wrongful termination cause of action are stated in detail in the motion for nonsuit on opening statement. In addition, element 3 [in the special verdict] is a misstatement of <u>Labor Code</u> § 432.2, which makes no mention of actions taken in response to a polygraph examination."

Similarly, Kavry objected to special verdict No. 1 on the ground question No. 3 was "incomprehensible" and a "misstatement" of section 432.2. Kavry, however, did not explain why question No. 3 was "incomprehensible." Nor did it object to special verdict No. 2, which set forth a separate cause of action for violation of section 432.2 using the same "and/or" language as special verdict No. 1.

"The rules are well-settled. ' "If the verdict is ambiguous the party adversely affected should request a more formal and certain verdict. Then, if the trial judge has any doubts on the subject, he [or she] may send the jury out, under proper instructions, to correct the informal or insufficient verdict." [Citation.]' (*Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456.) A party who fails to object to a special verdict form ordinarily waives any objection to the form." (*Behr, supra*, 193 Cal.App.4th at pp. 529–530.)

Here, because Kavry failed to raise *specific* objections to CACI No. 2430 and special verdict Nos. 1 and 2, we conclude it forfeited this claim of error on

17

appeal. (See *Behr, supra*, 193 Cal.App.4th at pp. 529–530; see also *People v Lang* (1989) 49 Cal.3d 991, 1024 [to preserve a claim of instructional error for appellate review, a party must object in the trial court on the specific grounds raised in the appeal, and cannot complain "that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language"]; accord, *People v. Andrews* (1989) 49 Cal.3d 200, 218 [same]; *Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9 ["When a trial court gives a jury instruction which is correct as far as it goes but which is too general or is incomplete for the state of the evidence, a failure to request an additional or a qualifying instruction will waive [or forfeit] a party's right to later complain on appeal about the instruction which was given."].)

    4.    *CACI No. 2430 and Special Verdict No. 1 Correctly Stated the Law and Any Alleged Error Was Harmless*

Even if we were to reach the merits, we would conclude CACI No. 2430 and special verdict No. 1 correctly state the law applicable to a claim for tortious discharge based on a violation of section 432.2.[14] In addition, we note the jury was provided with the text of relevant portions of section 432.2 as a separate special instruction, which left little doubt that McDoniel was seeking to establish liability under both subdivisions of the statute.

Kavry relies on *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949 (*Myers*) and *People v. Wesley* (1986) 177 Cal.App.3d 397 (*Wesley*) to support its claim the "and/or" language in CACI

---

14    Because we conclude the jury properly awarded McDoniel damages for wrongful discharge in violation of public policy, as set forth in special verdict No. 1, we deem it unnecessary in this case to decide whether a violation of section 432.2 provided an alternative ground for an award of damages, as the jury found in special verdict No. 2.

18

No. 2430 and special verdict No. 1 meant the jury made no findings under subdivision (a) of section 432.2.

In *Myers*, the jury awarded the cross-complainant Myers punitive damages of $1.1 million against cross-defendant Interface on a breach of contract claim, after the jury, in a bifurcated trial, had awarded Myers about $280,000 in net compensatory damages. (*Myers, supra*, 13 Cal.App.4th at p. 954.) The *Myers* court struck the punitive damages award because "[n]o special verdict findings were submitted to the jury on any cause of action except breach of contract," which does not support an award of punitive damages even if the defendant's breach is "wilful, fraudulent, or malicious." (*Id.* at pp. 958–960.) *Myers* also concluded the jury's finding that Interface engaged in "malice, fraud, or oppression" did not support an implied finding that the company had committed fraud, which claim had not been submitted to the jury even though Myers had pled this cause of action. (*Id.* at p. 961.)

Here, unlike the circumstances presented in *Myers* where the plaintiff failed to submit his fraud cause of action to the jury (to support an award of punitive damages), McDoniel submitted all three of his causes of action to the jury in four special verdict forms.[15] Special verdicts No. 1 correctly stated the law of tortious discharge in violation of public policy and No. 2 separately stated the elements to support a violation of section 432.2. And, as we have concluded, substantial evidence supports the finding that Kavry violated section 432.2 and that this violation supported a wrongful discharge claim. *Myers* is therefore inapposite to our case.

Kavry's reliance on *Wesley*, *supra*, 177 Cal.App.3d 397, is similarly misplaced. *Wesley* involved a trial court's failure to give a unanimity

___

[15]    Special verdicts No. 3 involved McDoniel's cause of action for Kavry's failure to provide a copy of his personnel file (§ 1198.5) and No. 4 covered damages.

instruction when the defendant was charged in a single count with possession for sale of cocaine or heroin. (*Id.* at p. 401.) The court reversed the defendant's conviction on this count for violation of the constitutional guarantee that a criminal conviction requires a unanimous jury verdict. (*Ibid.*) *Wesley* has no bearing in the instant case, as no unanimity instruction was required.

Lastly, even assuming error based on the "and/or" language, we conclude it is not reasonably probable that, in the absence of the error, the jury would have returned a verdict more favorable to Kavry. "[T]here is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission. A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 (*Soule*); accord, *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1073 (*Holmes*) [when challenging the jury instructions given in a civil case, the appellant has the burden to show it was "reasonably probable the jury would have returned a more favorable verdict" absent the alleged instructional error].)

Prejudice "depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his [or her] full case before the jury." (*Soule, supra*, 8 Cal.4th at p. 580.) In deciding whether instructional error was prejudicial, "the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580–581, fn. omitted.)

20

Here, there is no indication the jury was misled or confused by CACI No. 2430 or special verdict No. 1, as the jury only requested a readback of Kennedy's testimony regarding "paperwork from the polygrapher." In addition, our independent review of the record shows that during closing argument neither party mentioned the "and/or" language in CACI No. 2430 or special verdict No. 1; and that Kavry's counsel carefully went through both subdivisions of section 432.2 and how there allegedly was no proof it violated either provision.

Kavry also was not prevented from fully presenting its case to the jury. (See *Soule, supra*, 8 Cal.4th at p. 580.) To the contrary, during closing Kavry argued it never told McDoniel he had to take the polygraph examination if he wanted to keep his job, or that he was fired, including for purportedly failing the examination. Kavry also argued McDoniel was not on the work schedule because business was slow, after the theft of cash and marijuana; that "several times" Levy asked McDoniel for his consent before proceeding with the polygraph examination and provided him with a form advising him of his rights under the Labor Code; and that McDoniel had every reason to take the examination to clear his name, "no matter how much notice he was or was not given."

From the record as a whole, we independently conclude there is no reasonable probability the jury was misled by CACI No. 2430 or special verdict No. 1, including by each's use of the "and/or" language. (See *Soule, supra*, 8 Cal.4th at p. 580; *Holmes, supra*, 191 Cal.App.4th at p. 1073.) Accordingly, we conclude any purported error in the jury instruction and verdict form was harmless. (See *Soule*, at p. 580; accord, *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1244 ["[A] defective special verdict form is subject to harmless error analysis"].)

21

## II.

## Award of Attorney Fees

Kavry next contends the trial court erred when it awarded McDoniel attorney fees.  We agree.

### A.    *Additional Background*

As the prevailing party, McDoniel's motion sought $547,065 in attorney fees under three different statutes:  (1) section 432.2, in conjunction with section 432.6; (2) Code of Civil Procedure section 1021.5; and (3) Labor Code section 1198.5, subdivision (*l*), pertaining to special verdict No. 3 and the jury's finding that Kavry failed to provide McDoniel with a copy of his personnel file.

The trial court granted McDoniel's motion in part, awarding him about $212,000 pursuant to section 432.6.  The court ruled that, although section 432.6 became effective January 1, 2020, McDoniel's case did not concern an employment contract but instead "a general right to be free from undergoing a lie detector test," reasoning the effective date did not relate to "Labor Code section 432.6 prohibitions in general" including section 432.2.  The court, however, rejected McDoniel's alternative basis for an award of fees

under Code of Civil Procedure section 1021.5; and did not consider Labor Code section 1198.5 as a separate basis for such an award.[16]

## B. *McDoniel Is Not Entitled to Fees Under Section 432.6*

### 1. *Guiding Principles*

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees" except where " 'attorney's fees are specifically provided for by statute' " or by " 'the agreement, express or implied, of the parties.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*); see Code Civ. Proc., § 1021 ["[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties"].) " '[T]he legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air*, at p. 751; accord, *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213 (*Whitley*) [de novo review of trial court's award of attorney fees " ' "is warranted where the

_____

[16] Subdivision (*l*) of section 1198.5 provides for the recovery of costs and reasonable attorney fees if a current or former employee brings an action to obtain "a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." (§ 1198.5, subds. (a), (*l*).) However, in his opening brief in the cross-appeal, McDoniel did not argue that the $750 penalty imposed by the trial court under section 1198.5 also supported the court's award of about $212,000 in attorney fees pursuant to subdivision (*l*) of this statute. We thus deem the issue forfeited on appeal. (*Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1071, fn. 4 [an appellant forfeits an argument on appeal by failing to raise it in the opening brief]; accord, *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 [review limited to issues adequately raised and briefed]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [" 'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' "].)

determination of whether the criteria for an award of attorney fees . . . have been satisfied amounts to statutory construction and a question of law" ' "].)

In conducting independent review, "we look first to the words of a statute, 'because they generally provide the most reliable indicator of legislative intent.' [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]. 'In other words, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " ' [Citation.] We are also mindful of 'the general rule that civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' [Citations.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' " (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529–530 (*Pineda*).)

### 2.   *Section 432.6*

Titled "Waiver of rights, forums or procedures; unlawful employment practice," section 432.6 became effective January 1, 2020.[17] Subdivision (a) of section 432.6 provides in pertinent part: "A person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act (Part 2.8 (commencing with Section 12900) of Division 3 of Title 2 of the Government Code) or this code." Subdivision (b) of section 432.6 prohibits an employer from "threaten[ing], retaliat[ing] or discriminat[ing] against" an applicant or employee because of

---

[17]   (Lab. Code, § 432.6 added by Stats. 2019, ch. 711, § 3.)

his or her "refusal to consent to the waiver of any right, forum, or procedure" for a violation of the California Fair Employment and Housing Act (FEHA) or the Labor Code.

Subdivision (d) of section 432.6 provides: "In addition to injunctive relief and any other remedies available, a court may award a prevailing plaintiff enforcing their rights under this section reasonable attorney's fees." The trial court relied on this subdivision to award McDoniel attorney fees for Kavry's violation of section 432.2. In so doing, the court found subdivision (h) of section 432.6 inapplicable. It provides: "This section applies to contracts for employment entered into, modified, or extended on or after January 1, 2020." (§ 432.6, subd. (h).)

3.    *Analysis*

From the plain language of subdivision (h) of section 432.6, we independently conclude this statute is inapplicable to McDoniel. (See *Mountain Air, supra*, 3 Cal.5th at p. 751; *Whitley, supra*, 50 Cal.4th at p. 1213.)

First and perhaps most importantly, McDoniel's employment with Kavry ended in September 2018. Section 432.6, however, only applies to employment contracts entered into "on or after January 1, 2020." (§ 432.6, subd. (h).) "[W]here the law expressly states it applies prospectively only . . . , the law will be construed as having only prospective application." (*Rankin v. Longs Drug Stores California, Inc.* (2009) 169 Cal.App.4th 1246, 1259; accord, *Talley v. Municipal Court* (1978) 87 Cal.App.3d 109, 112–113 [changes to a vehicle code section that, "by its express terms," applied "only to offenses committed after January 1, 1978," did apply to defendants who committed the same offense before the effective date].)

25

Second, McDoniel did not "*waive* any right, forum, or procedure" as set forth in section 432.6, subdivision (a), nor did Kavry retaliate against him "because of [his] refusal to consent to the *waiver* of any right, forum, or procedure," as provided in subdivision (b). (Italics added.) " 'Waiver is the intentional relinquishment of a known right after knowledge of the facts.' " (*Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1030 (*Lanigan*).) " 'Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] There must be actual or constructive knowledge of the existence of the right to which the person is entitled.' " (*Kelly v. William Morrow & Co.* (1986) 186 Cal.App.3d 1625, 1635 (*Kelly*).)

McDoniel contends that he falls under the protection of section 432.6 because Kavry conditioned continued employment on the "forced waiver" of his right under section 432.2 not to submit to the polygraph examination. But at trial, McDoniel specifically relied on the fact that Kavry did not apprise him of this right in arguing Kavry violated subdivision (b) of section 432.2. Indeed, he testified that he would not have taken the examination had he known of this right, and that neither Levy nor Kavry—at the time of testing—gave him "paperwork" advising him of his right to refuse to submit to the test as a condition of continued employment.

McDoniel, on the one hand, could not "waive," or intentionally relinquish, a known right for purposes of subdivisions (a) and (b) of section 432.6, when he unambiguously testified, and throughout trial relied on the fact, that he had no knowledge of his right as an employee to refuse to submit to the polygraph examination, on the other. (See *Lanigan*, *supra*, 199 Cal.App.4th at p. 1030; *Kelly*, *supra*, 186 Cal.App.3d at p. 1635). For this separate reason, we conclude under the plain "waiver" language of the

26

statute that section 432.6 is inapplicable here. (See *Pineda, supra*, 51 Cal.4th at pp. 529–530.)

Finally, its legislative history further supports our conclusion that section 432.6 does not apply in this case. (See *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755 ["[T]he plain meaning rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. [Citation.] Courts have therefore considered legislative history even in cases where the text of a statute is clear; but only to confirm the interpretation already apparent from the plain language, not to advance an alternative meaning"].) It shows the Legislature enacted section 432.6 in response to the use of "mandatory arbitration agreements" and the waiver of employee protections in employment agreements. (Assem. Com. on Labor & Employment, Analysis of Assem. Bill No. 51 (2019–2000 Reg. Sess.) as introduced Dec. 3, 2018, p. 3.)

A Senate Judiciary Committee report summarized the purpose of Assembly Bill No. 51 (2019–2020 Reg. Sess.) as follows: "Forcing workers, as a condition of hire, to agree to mandatory, binding arbitration of any future legal disputes is a common legal tactic that employers use to limit their legal exposure, reduce their litigation costs, and keep incidents of workplace abuse, including sexual harassment, hidden from the public. Since current federal case law strongly favors enforcement of mandatory arbitration agreements, California cannot outlaw or discriminate against such agreements. Instead, this bill operates to ensure that California workers who enter into an agreement waiving their right to any particular forum for dispute resolution do so freely, and that workers who opt not to sign such agreements are not subjected to retaliation as a result." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 51 (2019–2022 Reg. Sess.) July 9, 2019, p. 1.)

27

As demonstrated by its legislative history, section 432.6 is not implicated here. There is no evidence that Kavry ever required McDoniel, as a condition of employment or continued employment, to submit a future employment dispute to a particular forum (i.e., arbitration), or to waive any employee protections in an employment agreement. (See Assem. Com. on Labor & Employment, Analysis of Assem. Bill No. 51 (2019–2000 Reg. Sess.) as introduced Dec. 3, 2018, p. 3.)

Despite the plain language of section 432.6 and its legislative history, McDoniel nonetheless claims that section 432.6, subdivision (d) "just adds an attorney[ ] fees procedure, rather than a cause of action, to clarify a now existing procedural remedy to a previously existing cause of action in Labor Code section 432.2." According to McDoniel, the "procedural remedy" is subdivision (d) of section 432.6 and its allowance for the recovery of reasonable attorney fees for a violation of the Labor Code. In support, McDoniel primarily relies on *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194 (*Kuykendall*).)

The issue in *Kuykendall* was whether a statute the Legislature enacted to refund an unconstitutional jail tax—Senate Bill No. 263 (Stats. 1993, ch. 1060) (Senate Bill 263)), codified in the Revenue and Taxation Code—should prevail over a conflicting refund plan ordered by the superior court. (*Kuykendall, supra*, 22 Cal.App.4th at p. 1199.) We concluded the new statute constituted the only authorized procedure for the plaintiff (in a representative capacity) to obtain a refund of the tax. (*Id.* at p. 1205.) In so doing, we also concluded the statute was intended to apply retroactively, noting: "Manifestly, the Legislature enacted [Senate Bill] 263 as a curative statute to end any confusion about reimbursement of the Jail Tax funds. [Senate Bill] 263's language clearly and unambiguously 'indicates the

28

Legislature intended a retrospective operation. [Citations.]' [Citation.] Review of [Senate Bill] 263's legislative history also discloses a legislative intent [Senate Bill] 263 would apply in all cases not reduced to final judgment on the statutory effective date. Thus, the superior court should have found [Senate Bill] 263 applied here." (*Kuykendall*, at p. 1209.)

Kuykendall is inapposite to our case.

First, the facts and legal issues in *Kuykendall* in no way resemble those here. *Kuykendall* involved a curative statute that merely created a procedure to return an unlawfully collected tax to those who paid it. Although the plaintiff in *Kuykendall* preferred the superior court's conflicting refund plan over that specified in Senate Bill 263, in either case the money was to be refunded to consumers. (*Kuykendall, supra*, 22 Cal.App.4th at p. 1199.)

Second and more importantly, *Kuykendall* required us to decide whether the Legislature intended Senate Bill 263 to have retroactive application. (*Kuykendall, supra*, 22 Cal.App.4th at p. 1209.) In finding such intent, we focused on the purpose of Senate Bill 263 "to end any confusion about reimbursement" (*Kuykendall*, at p. 1209), including its provisions and legislative history (*id.* at pp. 1209–1211). It was in this context that we set forth in a footnote an *additional* ground to support retroactively: Senate Bill 263 was procedural in nature, as it did not create any new causes of action, but merely served to refund unlawfully collected taxes. (*Kuykendall*, at p. 1211, fn. 20.)

Here, unlike *Kuykendall*, we are not called upon to determine legislative intent regarding the retroactive effect of a statute. The Legislature answered that question for us in section 432.6, when it expressly stated the statute operates prospectively only to contracts entered into on or after January 1, 2020. (§ 432.6, subd. (h).) As a result, there simply is no

29

need for us to determine whether section 432.6 is procedural in nature to support a retroactive application.[18]

In sum, we conclude the trial court erred in awarding McDoniel attorney fees under section 432.6, subdivision (d).

**C.** ***McDoniel Is Not Entitled to Attorney Fees Under the Private Attorney General Fee Statute***

In his cross-appeal, McDoniel claims the trial court abused its discretion when it refused to award him attorney fees under Code of Civil Procedure section 1021.5. In ruling against McDoniel, the court found that being improperly subjected to a polygraph examination under section 432.2, or prevailing on his personnel file claim under section 1198.5, were "not matters significantly benefiting the general public or large class of persons." The court instead found McDoniel's recovery "was limited to him," "benefitted him," and nothing in the judgment "impact[ed] the general public or a large class of persons."

1. *Guiding Principles*

Under Code of Civil Procedure section 1021.5, a court may award attorney fees to a prevailing party in an action that "resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

---

18    In any event, we note that unlike Senate Bill 263 at issue in *Kuykendall*, section 432.6 appears to create new causes of action based on violations of FEHA or the Labor Code, including for "injunctive relief." (§ 432.6, subd. (d).)

Code of Civil Procedure section 1021.5 is an exception to the general rule that parties in litigation pay their own attorney fees. (*Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 570–571 (*Grossmont Union*).) The statute encourages " 'litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and . . . achieves this aim by compensating successful litigants with an award of attorney's fees.' " (*Ibid.*) The statute's " 'purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.' " (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 635.)

The burden to demonstrate all elements of Code of Civil Procedure section 1021.5, "including that the litigation costs transcend his or her personal interest," is on the party seeking such fees. (*Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, 769 (*Millview*).) " 'The trial court's judgment on whether a plaintiff has proved each of the prerequisites for an award of attorney fees under [Code of Civil Procedure] section 1021.5 "will not be disturbed unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion." ' " (*Ibid.*)

2.    *Analysis*

We conclude the trial court properly exercised its discretion in ruling that McDoniel's action sought compensation for wrongs personal to him.[19] (See *Grossmont Union, supra*, 98 Cal.App.5th at p. 572; *Millview, supra*, 4 Cal.App.5th at p. 769.)  This included causes of action against Kavry for *his* wrongful termination, for its failure to turn over *his* personnel records, and for defamation as a result of its accusations that *he* allegedly committed the theft of cash and marijuana and was dishonest.  None of these causes of action were brought on behalf of a large class of persons, much less the handful of other Kavry employees who also took the polygraph examination.[20]  (See *Grossmont Union*, at p. 572; *Millview,* at p. 769.)

Moreover, we independently conclude McDoniel also cannot satisfy another required factor—the necessity and financial burden of private enforcement.  (See Code Civ. Proc., § 1021.5.)  McDoniel's financial incentive to pursue this action was unmistakable.  In closing argument, he asked the jury to award him $350,000 in noneconomic damages, and his complaint included a request for punitive damages.  (See *Planned Parenthood v. City of*

---

[19]    As noted, McDoniel asserted an unsuccessful PAGA claim on behalf of himself and all "other aggrieved employees."  But even then, in granting summary adjudication as to this claim, the trial court ruled McDoniel's prefiling notice focused "exclusively" on him and did not "reference any other employees, let alone suggest they were subjected to the same misconduct" by Kavry.

[20]    Whether an action significantly benefits the general public or a large class of persons, for purposes of the private attorney general fee statute (Code Civ. Proc., § 1021.5), is not to be confused with the separate issue of whether section 432.2 sets forth a "fundamental" and "substantial" public policy concern, for purposes of the tort of wrongful termination in violation of public policy (*Stevenson, supra*, 16 Cal.4th at pp. 889–890; *Green, supra*, 19 Cal.4th at p. 75).

*Santa Maria* (1993) 16 Cal.App.4th 685, 691–692 [denying private attorney general attorney fees where litigant sought $60,000 in damages, which the court deemed sufficient financial incentive for litigation].)

"The financial burden of private enforcement requirement means that an award of attorney fees under section 1021.5 of the Code of Civil Procedure is only appropriate when the cost of the claimant's legal victory transcends his or her personal interest—i.e., when the necessity for pursuing the lawsuit placed a burden on the plaintiff out of proportion to his or her individual stake in the matter." (*Luck, supra*, 218 Cal.App.3d at p. 30.) "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 (*Beach Colony II*); accord, *Satrap v. Pacific Gas & Electric. Co.* (1996) 42 Cal.App.4th 72, 79–80 (*Satrap*) ["Private attorney general fees are not intended to provide insurance for litigants and counsel who misjudge the value of their case, and vigorously pursue the litigation in the expectation of recovering substantial damages, and then find that the jury's actual verdict is not commensurate with their expenditure of time and resources."].)

Here, viewing " ' "the estimated value of the case at the time the vital litigation decisions were being made" ' " (*Satrap, supra*, 42 Cal.App.4th at p. 79), we conclude McDoniel was seeking "a substantial financial recovery, and that this was sufficient motivation to pursue the case" (see *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1329–1330 [the plaintiff's request for millions of dollars in damages for wrongful termination, and hundreds of thousands of dollars for improper wage deductions, not to mention his request for punitive damages, was sufficient motivation to pursue the case and did not place a burden on him out of proportion to his

33

individual stake in the matter]; *Beach Colony II, supra*, 166 Cal.App.3d at p. 114). For this separate reason, we independently conclude McDoniel is not entitled to an award of attorney fees under the private attorney general fee statute.

**D.** ***McDoniel Forfeited His Claim for Fees Under PAGA***

As far as we can tell, for the *first* time in this case McDoniel asserts he "may" be entitled to award of fees under section 2699, subdivision (k)(1)[21] of PAGA. We conclude he has forfeited the issue on appeal.

1. *Additional Background*

At a posttrial hearing on April 4, 2023, the parties argued over the form of the judgment, in response to McDoniel's "motion asking for a 'status conference' about entry of judgment." In that "motion," McDoniel informally requested that the trial court sua sponte reconsider its ruling from October 2022 granting summary adjudication as to his PAGA claim, and instead impose a $100 "[p]enalty" against Kavry for its violation of section 432.2. In granting summary adjudication, the court had found McDoniel's notice to the state Labor and Workforce Development Agency (LWDA) was defective because it focused "exclusively on defendants' treatment of [him]." In so doing, the court relied on *Khan v. Dunn-Edwards Corp.* (2018) 19 Cal.App.5th 804, 808–810, which affirmed summary judgment because the plaintiff there failed to comply with PAGA's administrative procedures when

---

21      Subdivision (k)(1) of section 2699 provides in part: "[A]n aggrieved employee may recover the civil penalty described in subdivision (f) and may be awarded injunctive relief in a civil action pursuant to the procedures specified in Section 2699.3 filed on behalf of the employee and other current or former employees against whom a violation of the same provision was committed. Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs, including any filing fee paid pursuant to subparagraph (B) of paragraph (1) of subdivision (a) or subparagraph (B) of paragraph (1) of subdivision (c) of Section 2699.3."

submitting his prefiling notice letter.  The court refused McDoniel's invitation to sua sponte reconsider its grant of summary adjudication for Kavry on this claim.

2.    *Analysis*

Before McDoniel can establish entitlement to fees under PAGA, he *first* must show the trial court erred in summarily adjudicating this cause of action.  This he has not done.

Indeed, McDoniel failed to follow California Rules of Court, rule 8.204(a)(1)(B).  It mandates that an appellate brief "*must* [¶] . . . [¶] [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (*Ibid.*, italics added.)

With regard to whether the trial court erred in granting summary adjudication of his PAGA claim, McDoniel failed to comply with this basic rule of appellate procedure:  there is no separate heading or subheading summarizing this issue in his opening brief; there is no discussion of the standard of review we should apply for reviewing the trial court's grant of summary adjudication; there is no discussion of the prefiling administrative requirements of PAGA, including the adequacy or inadequacy of his own June 2019 LWDA notice that served as the basis of the court's ruling; there is no meaningful analysis of *Khan*, which the court relied on in granting Kavry's motion; and there is no mention of authorities relevant to this issue,

35

including *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001, review granted April 16, 2025, S289305 (*Leeper*),[22] which predated his opening brief.

In short, McDoniel put the proverbial cart before the horse in arguing he was entitled to a fee award under PAGA, without addressing the threshold issue of whether the trial court erred in granting Kavry's summary adjudication motion. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 (*Sprague*) ["[i]t is the duty of [an appellant], not of the courts, 'by argument and the citation of authorities to show that the claimed error exists' "]; see also *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 500 "[w]hen an appellant fails to raise an issue in the opening brief . . . we . . . decline to address the issue or address it in a summary manner"]; *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836 [" '[i]ssues not raised in an appellant's brief are deemed waived or abandoned' "].)

Accordingly, we conclude McDoniel has forfeited on appeal his claim of entitlement to fees under PAGA. (See *Sprague, supra*, 166 Cal.App.3d at p. 1050; accord, *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 [it is not the responsibility of a reviewing court to conduct legal research in search of authority that supports a party's legal arguments on appeal].)

---

[22] The California Supreme Court recently granted review of *Leeper* on two issues: "1.) Does every [PAGA] action necessarily include both individual and non-individual PAGA claims, regardless of whether the complaint specifically alleges individual claims? 2.) Can a plaintiff choose to bring only a non-individual PAGA action?" (*Leeper, supra*, S289305, Supreme Ct. Mins., April 16, 2025.)

## III.

## The Form of the Judgment

In his cross-appeal, McDoniel also contends the trial court erred when it excluded Shepard from the judgment.

### A. *Additional Background*

The parties in November 2022 (through their respective counsel) entered into the Stipulation.[23]  In early March 2023, Kavry objected to McDoniel's proposed judgment holding Shepard jointly and severally liable for McDoniel's damages.  Kavry argued the Stipulation "preserved the future right to address that issue but did not decide it."

During a hearing on April 4, 2023, the parties argued over the form of the judgment.  The following day, the trial court entered judgment for McDoniel against Kavry and Shepard, with the Stipulation attached as an exhibit.  While the new trial and JNOV motions were pending, on April 10

---

[23]    The Stipulation provides in full:  "WHEREAS Defendant Kavry Management, LLC and Defendant Chris Shepard agree that in exchange for Chris Shepard continuing to be available and produced as a witness to testify at trial, and Chris Shepard agreeing to be personally liable for any judgment entered in this action against Defendant Kavry Management, LLC and in favor of Plaintiff Steven McDoniel, Plaintiff Steven McDoniel agrees to dismiss Defendant Chris Shepard without prejudice to seek, if and as applicable, an amendment of any such judgment to add Chris Shepard based on this Stipulation or otherwise to include without limitation [*sic*] based on alter ego liability. [¶] WHEREFORE THE PARTIES SO STIPULATE."

the court—ostensibly pursuant to Code of Civil Procedure section 663[24]—sua sponte vacated the April 5 judgment and entered a new judgment against only Kavry. In a minute order showing this change, the court stated, McDoniel "may file a motion to amend [the] judgment."

In early June 2023, Kavry filed its appeal from the April 10 judgment. A few days later, McDoniel filed his first cross-appeal. After awarding attorney fees and costs to McDoniel, the trial court entered an amended judgment on November 27, 2023, against Kavry. In mid-December 2023, Kavry appealed from the November 27 judgment. McDoniel in response filed his second cross-appeal.

As set forth in documents attached to his November 27, 2024 motion to augment,[25] McDoniel in May 2024 moved to add Shepard to the judgment under an alter ego theory of liability. In September 2024, the trial court refused to decide the alter ego motion, ruling the matter was stayed as a result of McDoniel's first cross-appeal.

---

[24] Section 663 of the Code of Civil Procedure provides: "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict." On appeal, McDoniel has not challenged the trial court's *authority* to vacate the original judgment sua sponte.

[25] As noted in footnote 3, item 3, *ante*, we grant McDoniel's requests to further augment the record and for judicial notice only for the limited purpose of observing these matters after the entry of the judgment and the parties' respective notices of appeal.

38

On December 3, 2024, McDoniel requested we take judicial notice of various documents, including a ruling from the trial court in November 2024 denying his motion to intervene in a third-party action brought by Shepard. McDoniel claimed these documents showed Shepard allegedly had made statements in other actions that conflicted with representations he and Kavry made in the instant case involving his rights to, and ownership of, Kavry's assets; and that Shepard and Kavry therefore "should be judicially estopped from asserting an alter ego motion supports Shepard's absence from the judgment."

## B.    *Analysis*

Absent extraordinary circumstances, " 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons, supra*, 14 Cal.4th at p. 444, fn. 3; accord, *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 (*Pisciotta*) [same].)  "This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation." (*Pisciotta*, at p. 813.)

Here, no such extraordinary circumstances exist.  (See *Vons, supra*, 14 Cal.4th at p. 444, fn. 3; cf. *Pisciotta, supra*, 30 Cal.3d at p. 813 [a reviewing court may "consider postjudgment events when legislative changes have occurred subsequent to a judgment [citations] or when subsequent events have caused issues to become moot [citation]"].)

Indeed, McDoniel's further request to augment the record, and additional request for judicial notice, involve events occurring *after* the trial court entered judgment, and *after* the parties filed their respective notices of appeal from that judgment.  We thus decline to consider these matters.  (See *Vons, supra*, 14 Cal.4th at p. 444, fn. 3; *Pisciotta, supra*, 30 Cal.3d at p. 813.)

39

Moreover, these matters also appear to involve contested factual issues that have yet to be resolved by the trial court, including the parties' rights, if any, under, and the enforceability of, the Stipulation (signed only by their respective counsel); whether or not Shepard is the alter ego of Kavry; and whether judicial estoppel should apply to Shepard and Kavry.  (See *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [appellate court may refuse review of any new issues on appeal premised upon contested factual matters]; *Jack Farenbaugh & Son v. Belmont Constr.* (1987) 194 Cal.App.3d 1023, 1032 [alter ego liability is a factual question for the trial court, and includes myriad factors including whether an individual commingled funds or other assets of the corporation; whether the individual treated corporate assets as his or her own; whether the individual failed to maintain adequate corporate minutes or records; whether an individual is the sole ownership of the corporation's stock; and whether the individual disregarded corporate formalities and failed to maintain arm's length transactions with the corporation]; *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46–47 ["the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review"; and "[e]ven if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine, [citations], whether it should be applied is a matter within the discretion of the trial court"].)  Accordingly, we decline on this limited record to decide whether Shepard is jointly and severally liable for the judgment; and express no opinion on how the trial court should answer this question in the first instance.

## DISPOSITION

The portion of the judgment awarding McDoniel attorney fees is reversed. In all other respects the judgment is affirmed. In the interest of justice, both parties to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


IRION, Acting P. J.

WE CONCUR:


DATO, J.


RUBIN, J.

41